May it please the court. My name is Wayne Young. I represent Mr. Hirsch in this appeal. I appreciate the priority. There are two related issues in this case. The first is whether the hearing conducted by the court into Mr. Hirsch's competence satisfied the statute. And the second issue was whether the court abused its discretion in denying his motion to withdraw his plea. And I say they're related because the competency issue certainly spills over into the Rule 32 issue to withdraw the plea. So I intend to focus on the competence for certainly welcome questions on the Rule 32 question. And that specific issue isn't whether the court properly found Mr. Hirsch competent, but whether the hearings that the court conducted complied with 4241, which requires, first of all, reasonable cause. A hearing is required if there's reasonable cause to think there's an issue of competence. And that was clearly met here requires reports, which was done here. And then Section C, the hearing shall be pursuant to 4747 D, which I think implicates an evidentiary hearing in the normal course of business. If the if the reports tend to show an issue of competence and the key thing in this case, the reason that we're here is from the Timmons case, this court has ruled that the court shouldn't just accept unquestionably counsel's representations as to his defendant's competence. There's some additional duty here beyond an ordinary, say, suppression issue for the court to take responsibility into the competence inquiry, something analogous to a Rule 11. And counsel, are you are you concerned here that the court that the hearing that the court actually held was does not satisfy the statute or that that or that the court had an obligation at a subsequent time to conduct a subsequent hearing? Well, I think there were three hearings here, three different dates on which this was discussed, if not four. And all of those together did not satisfy the statute. So everything. So everything considered as a whole here, you contend, did not satisfy the statute. Yes, sir. And the way I get there is to look at the reports and look at the hearings. The first report is Dr. Burris, who diagnosed a schizotypal personality disorder. And then he lists a lot of symptoms. And they're at page 26 and 27 of the excerpts of record. And he just talks about Mr. Hearst's difficulty in dealing with other people, his alienation, his anger. There's a whole list of symptoms. And what he Dr. Burris finds him competent. But what's interesting, he says, it's going to require a sustained effort for him to focus on his defense. So there's at least a question there. Some some good, good material for a defense attorney to work with. But they go to the hearing and counsel asked no questions submitted. There's no questions. And this is the first hearing on January 31st of 2000. And it's just submitted on the report. Court finds him competent. Right. In the interval before the next report, two attorneys find tell the court he's not cooperating with me. Now, that's not the ultimate issue, but that's their opinion that that the defendant is not cooperating with them. So Judge Hatter orders a second report and that comes back with a different diagnosis. This is a borderline personality disorder, but also lists a similar list of symptoms to the first one. So, again, there's material here to work with on the issue of competency. You have two different diagnoses. So there's disagreement by government psychiatrists. And there's this list of symptoms. Again, the second report by Dr. Murad finds him competent. But there's some question about it, at least some material that should lead to inquiry. And then there's a third report that wasn't submitted to the court exactly. But the court did review it. He mentioned on December 11th. This is the third hearing that he had read Dr. Mills report. And Dr. Mills report agrees with the first report, says it's schizotypal and list all the symptoms. So three psychiatrists have examined him. All three of them are two of the government ones. But list these problems, severe problems. And one really doesn't address the competence issue because it's more on the specific intent issue. So then we get to the crucial point, which is these three days. Do we have any disagreement among the among the medical experts as to whether he is competent? No, sir. There's no disagreement among any of them. How many? How many different medical experts? Three, three, three medical experts who examined who examined Mr. Hirsch. All three of them are agreed that while he has it's evident that he has mental problems, that those mental problems do not affect his ability to understand the charges and to aid in his defense. If he's willing to aid in his defense, the two government psychiatrists said exactly that. The third one, as Miss Matterson points out in a brief, wasn't specifically asked to investigate competence, but mental state in terms of an insanity defense, but came out with a comparable diagnosis of schizotypical personality disorder. So with that caveat, yes, they all found him competent. But all three suggested there were these significant symptoms that counsel, had he chose to, certainly could have raised the question about confidence, competence in the evidentiary hearing, but chose not to. And this is where the duty of the judge gets triggered. And that brings us to the crucial three days before the guilty plea. On the 7th, this is the Thursday before trial is supposed to start on Tuesday, there's a threat of suicide. And however serious it was, that's the first event. And then on Monday, the day before trial, Judge Hatter himself says, I am concerned about Mr. Hirsch's competence and orders another examination pursuant to the government's request for an examination. But here it is on the day before trial. The court has concerns, says I'm concerned about his mental state. And in the same hearing, Judge Hatter mentioned that he had heard from another source of a claim. Me on your sequence here. December 7th, you invoke. Then when did Judge Hatter order? You talk about the suicide. Yes, sir. Then you injected something about Judge Hatter on December 11th, the day before trial. Right. The court says itself. So it's fine. I am still concerned about Mr. Hirsch's mental state. And he reported that he had heard from an outside party and disclosed it to everybody that there was a claim of innocence. And the government, because they had seen the third report, had asked for an independent evaluation. So the court says, I'm concerned about his competence and yet takes a jury waiver that day. And then the next day, before a further examination is conducted, the court takes the guilty plea. There's no dispute that it complied with Rule 11. So you take those three events together, the three separate hearings. There was never any attempt by defense counsel to question his competence. Mr. Hirsch, the cases are clear. You can't rely on the word of the defendant whose competence is in question. So my argument is that by pursuant to Timmons, there's a duty upon the court to go further, to inquire further. Now, counsel, why isn't this an argument about ineffective assistance of counsel? Well, it could be, Judge. And it could be a Rule 11. But I think they all merge into. Are you contending that counsel was incompetent here? Well, you know, on direct appeal, it's awfully difficult to raise an issue of ineffective assistance. That's generally the grounds for 2255 because you're stuck with the record. So for that reason, and because of Timmons, which imposes. You certainly could argue plain error. You could argue plain error. And that's that would be the Rule 11. You know, is it a knowing and voluntary plea? But that gets back to competence. So I think ultimately, however you approach it, it all comes back to the quality of the inquiry into. Mr. Young, if the court has held hearing after hearing after hearing over the course of a long period of time and heard from at least three different doctors, three different medical experts who have all examined him, who have come to the same conclusion, and counsel, and this is not a single attorney. We have a series of counsel, each one of which has come to the conclusion evidently that there is no grounds or at least that they're not willing to challenge the medical experts. What more is the district court supposed to do here in the exercise of due process that hasn't been provided to Mr. Hirsch? Two responses. One is all of those attorneys didn't challenge competency. They did report to the court that their client wasn't cooperating with them. But more importantly, my argument is there weren't hearings. There were three proceedings at which competency was discussed. But there wasn't this inquiry into all these personality disorders that were identified by the three government psychiatrists that certainly raised questions, even in their mind, about competence. They concluded he was competent, but there was some hesitation there. And I guess from a defense point of view, if you wanted to challenge competency, there's an awful lot to work with in those reports, and someone had to make that inquiry. And because it's a mental health issue, Timmons makes clear that the judge should not accept unquestionably the opinion of defense counsel as the counsel. What's the rule you want us to impose then? Whenever you've got three psychologists that say the man's competent, and you've got three or four counsel because he went through a number of attorneys, and they don't question his competence really. I mean, they say there's some question about it, but not serious enough that they ask for a hearing or they have their own expert or anything. I mean, they had the one expert who he refused to talk to. But what's the rule you want us to impose here? The first part of the rule is there has to be a minimal showing. If all these reports come back and say he's malingering, there's no evidence of incompetence, none of that, then it's over. But the reports say he's competent. My point is the material, all the meat of the reports certainly is enough to trigger the inquiry. And then that inquiry, that really is a difficult question. Is the judge supposed to cross-examine? At minimum, I think the psychiatrist has to be asked to report perhaps the appointment of a master to make that inquiry. Timmons, by the way, was the judge taking the word of defense counsel. In this case, Judge Hatter was taking the word of the doctor. Do you see a distinction? Well, I think he's also taking the word of the defense counsel because defense counsel isn't raising it. Well, I understand that. And the court goes along with it. Okay. Thank you. One last question, counsel. If we adopted your theory of the case, what is it that we're sending this back to Judge Hatter to do? Is that to hold a competency hearing to judge whether Mr. Hirsch was competent as of December when he entered his guilty plea or whether he's competent today? There is a Ninth Circuit precedent that seems to suggest that. It goes back to the district court and has to see if we can determine competence at the time, three years ago. I think it's a reach, three years having passed. But I think there's an opinion by Judge Kaczynski that suggests that procedure. If that doesn't work, if you can't make the determination as to competence at that time, then the plea is vacated and you would have a determination of competence now because he would be subject to a new trial. Thank you. May it please the Court. My name is Barbara Masterson, and I represent the athlete of the United States. Your Honors, the district court did not commit clear error in finding Mr. Hirsch competent to stand trial, nor did the district court commit any error in its conduct of the competency proceedings. It's also the government's position that the district court did not abuse its discretion in finding that the defendant failed to provide a fair and just reason to withdraw his guilty plea. With respect to the alleged error in the court's finding Mr. Hirsch competent, as the court is certainly aware, the district court ordered sua sponte two competency evaluations under Section 4241, having found reasonable cause to believe that there might be a problem. The primary focus of the district court's referral was the fact that the defendant appeared incapable of getting along with his counsel. And as the court realized, or understands, the report from Dr. Burris at the Metropolitan Detention Center was that Mr. Hirsch was competent to assist his counsel, and he understood the proceedings. This conclusion was not challenged by the defense at the competency hearing. Then, after further disagreement with the ---- Can I ---- we're sort of somewhat familiar with that sequence from the briefs and the argument. 4241 talks about the court shall grant the motion, or shall order such a hearing on its own motion. Now, in this case, Judge Hatter did, in fact, order the inquiries. But did he ---- was there ever a hearing where the doctors were in court so that the judge could examine the underlying issues that counsel has adverted to this morning? Yes, Your Honor. After both of the reports that were specifically addressed or that addressed competency, after both of those reports were returned, there was a hearing where they ---- the fact of the reports was made ---- it was noted on the record. At the first hearing, and I believe ---- Were the doctors ---- and the doctors were present? At the first hearing, Dr. Burris was present in court. And was he ever examined to flesh out his opinion or address anything in the reports? She was never ---- Excuse me. She was never questioned. Okay. So that's what I come back to, is the hearing, in your view, the hearing simply means that there's a court proceeding in which the issue is addressed, not a hearing in which necessarily the doctors who conducted the out-of-court psychiatric evaluations, A, must be present, and if present, must be examined. Your Honor, the ---- in my view, in the government's view, the hearings were adequate, even though there was no questioning of the doctors. And for the record, Your Honor, Dr. Morad, who prepared the second Section 4241 referral report, was not present at the hearing where that report was addressed. Section 51? In Section 4247D is this governing statute for the competency hearing. That statute provides that the defendant shall be afforded the opportunity to question witnesses, cross-examine, testify in his own defense. It does not mandate that any witnesses be called, any evidence be presented. In this instance, the fact of the reports and the competency issue was certainly made aware to counsel, and counsel had no objection. Well, I'd like to ---- we know that counsel didn't. That's clear. But coming back to the structure of the statute, the statute says the court shall order such a hearing, and as you've said indeed, that the defendant shall have the opportunity to confront and examine. Now, what has happened here is that defense counsel, for whatever reason, chose not to pursue the doctor's reports. Now, 4241A imposes on the court, however, and Timmons, at least with respect to defense counsel, not raising things, or stating his opinion as to competency, Timmons and the statute seem to suggest clearly that the court has some role here, affirmatively to take action. Are you saying that the statute simply only requires Judge Hatter to have ordered the reports and his sua sponte obligations are over, or does, as counsel is suggesting, once those reports come back and there's anything on the face of those that would raise support, further questions about actual competency, in light of the judge's own perception and interaction as he's had with this defendant, to take the next step, to go ahead and cross-examine, ask questions of the doctor to satisfy himself that the doctor really has explored all the issues that go to competency? Well, Your Honor, I agree that the district court has a, that is obligated by statute, if there is the reasonable cause to believe that there's a problem, that the district court does need to do something. Timmons is distinguishable, and a critical point about Timmons has, I need to express it to the court, that in Timmons there were two prongs on which the defendant was found incompetent. The first was he was crippled by the delusions that called into his question his decision to go to trial instead of accepting a guilty plea. I believe it was a bank robbery case. He was, the evidence was overwhelming, but his delusions that were found by the psychiatrist caused him to believe that he would be exonerated even if he went to trial. The second prong was the conflicts he had in agreeing, in getting along with counsel. When, after the several reports that were done, the commitment and the qualified finding of competence for that defendant, that was when new counsel was appointed to represent him. That counsel represented that Mr. Timmons was able to work with this counsel. It was at that point that the district court closed the inquiry, having neglected to address the impact of the delusions on the defendant's decision to go to trial. So I believe that it was that. But I'm not, I understand Timmons, and that's why I'm questioning. Here you have a situation where Mr. Hirsch keeps continually saying he can't get along with his counsel and vice versa. So the silence on the part of counsel should be suspect. Let's posit that in any event. You may disagree, but at least that undercuts. If there is some doubt about the relationship, and Judge Hatter has acknowledged that there is, continuously he's recognized that they have trouble getting along, and I think he did, in fact, appoint new counsel at one point. So in any event, in this situation, we now have a judge who is able to assess from a perspective of a judge, not a perspective of a doctor who's looking at mental competency. That's an important aspect, the medical judgment. But does the court itself not have some independent obligation to make sure that what he's observing in court and the things that have caused him concern and what the doctor has reported, not just his bottom line conclusion, but what he's reported, don't dissipate or dispel all of the concerns about how this defendant is going to be able to be competent in court. And that's my concern here is that I think Judge Hatter did do, clearly took all the first steps. The issue before us is whether there's some obligation, so to speak, to go further. Well, I think, I don't know if there's an obligation to go further than what the judge did. While, because he needs to rely on counsel's reporting as an officer of the court as to the relationship between himself and the defendant, Mr. Hirsch. And that is going to further inform the district court when it is evaluating and has the opinion of the expert as to that discrete issue. Because the district court had the report from particularly Dr. Murad as well as Dr. Burris, Dr. Burris in her report suggested a way that the parties could get along, the defendant could get along better with his counsel, a suggestion of how to maximize their success in addition to the finding that Mr. Hirsch was competent and able to get along with his counsel. And Dr. Murad's report, he noted that the conflict between counsel and Mr. Hirsch was not the product of his mental disease or of his psychiatric issues. It was disagreements over strategy. But in any event, it was not a disabling factor as far as his competence to proceed. And with those two conclusions by the experts and then not hearing anything from defense counsel as to, well, I have expressing a disagreement with the accuracy of those reports. And in addition, Dr. Murad's report, the second one, indicated that Mr. Hirsch was able to get along with counsel if he so choose. And that he, that when, I mean, if the defendant is deliberately causing a conflict to try and trigger a finding that he is incompetent on that crime, that is something that I think the district court can factor in deciding whether or not he is, in fact, competent. And those reports coupled with defense counsel's, his silence indicates that there was no disagreement with that conclusion. That is something that the district court, I believe, is entitled to rely on. And that going further and calling the experts to testify I don't believe is necessary. I mean, in essence, this was defendant stipulating to, and the government stipulating to the testimony and the written report of the expert. Well, that's what concerns me. I mean, the government is not representing the defendant, though it has an obligation, obviously, to raise issues. And the defense counsel may be incompetent or who knows what's going on. So there is a role for the judge that the statute actually clearly mandates. Pate v. Robinson, that whole line of cases, imposes on judges to assess the competency of defendants in their courtroom, whether or not the defense counsel says anything. So I think that's the tricky aspect of the case. And I think Judge Hatter has satisfied that. Okay. But thank you, Your Honor, Mr. Robinson, the government would urge the court to affirm the conviction. Thank you. I'll give you a minute for a quick rebuttal, but just a minute. I would just like to quote from Dr. Murad's report, which is the one Ms. Masterson just referred to, and this is on page 78 of the excerpt of record. Any problems Mr. Hirsch may experience at present in his working with Mr. Rozanski would be a function of disagreement over strategy, that's not competence, or possibly a function of Mr. Hirsch's personality conflicts, personality characteristics. So there's the government's psychiatrist saying, I'm not sure what it is. If he can't cooperate with his counsel, maybe because he's not trying to, but it might be a function of his personality characteristics, which go back. Isn't that sort of true of all of us? We don't get along with people. It's often a function of our personality characteristics. I mean, I'm not sure what that demonstrates. What it demonstrates is because of the diagnosis, that he had a personality disorder, maybe not a full-blown Axis I disorder, but a personality disorder, that's a minimum amount to trigger concern about his competence, and then the doctor says, and that might prevent him from being able to cooperate with his counsel. It required further inquiry, and I disagree with the government about, you can rely on the defense counsel's representation. A finding of competence is not necessarily in the client's best interest, because it may trigger the labyrinth of going to Springfield, and this is a case in which there's a relatively small sentence. So there's all kinds of reasons the defense counsel might not want to challenge the question of competence, and that's what triggers the duty upon the district court. Thank you. Case disargued will be submitted. We thank both counsel for their arguments. The next case on calendar is Harris v. Hamlet. Good morning. May it please the Court. My name is Gerald Brannan. I'm appearing on behalf of the appellant, Duane Harris. The question for consideration here is whether the court's refusal to give special instruction C, which was a correct statement of the law and supported by substantial evidence in the record, had a substantial and injurious effect on the state court verdict, and therefore violated Harris's due process rights. Refining that statement a little more, if any judge in deciding whether the error had a substantial or injurious effect on the verdict, is in equipoise about whether it did the Richard issue. Appellant claimed. Excuse me. Who's got that? Who says it? Could the clerk take it, please? Appellant claimed. But the instruction C, isn't that really encompassed in Calgic number 512, the stock jury instruction? I don't think so, Your Honor, because Calgic 512 does not say anything about the fact that the jury can consider the self-defense claim when there are other motions other than fear that the perpetrator might have entertained on the day of the incident. But the law is that the perpetrator has to be motivated by fear alone. Fear alone, right. And in fact, 512 says, must be motivated by fear alone. It's a very forceful directive. I think it precludes the jury from considering, in this case, I think it precluded the jury from considering Harris' imperfect self-defense claim. But doesn't People v. Proveno say in the instruction, which states that the party killing must act under the influence of such fears alone, is a correct statement of the law? It is a correct statement of the law, but it does not account for his defense. And I think that there were lots of instructions that talked about imperfect self-defense. None of them ever mentioned that the perpetrator could entertain all kinds of motions and the jury could still consider the self-defense claim. In fact, our contention is that Calgic 5.12 and 5.14 preclude the jury from doing that by saying, well, 5.12 is saying that he must act from fears alone. And I think it would be hard for a jury in the face of a lot of evidence of anger, which I think this record shows us, to consider that claim given the instructions. Your theory as to what was precluded here is that he had multiple emotions, one of which was anger and one of which was fear. At the time he pulls the trigger, under your understanding of what California law is, what did he have to show to have a perfect self-defense? He had to convince the jury that he acted from fear when he pulled the trigger. Right. And what was he precluded from? Well, I believe if the jury was, well, they were inundated with evidence that he was angry, very angry. And given that context, the evidentiary context of the case, they would have been precluded from entertaining his claim of imperfect self-defense given the instruction. And the claim of imperfect self-defense is what? That he must have acted from fear alone. You know, he had a subjectively reasonable belief. OK, so you're saying that it leads the jury to believe that if he had anger at any time leading up to this confrontation, that he can't prevail on the self-defense because they would have understood that at some point in the sequence, even though he pulled the trigger out of fear because he was in the rage of emotions that included anger, they wouldn't accept that, even though at the critical instant of the act of killing, that he would have acted leading up to that. Exactly. More than fear alone. Exactly. And more so because Calject 5.12 says must. I think that's a pretty powerful directive. Must be acting out of fear alone. I think it would be almost impossible for a jury to make the distinction. I mean, if they know this guy was very angry, but he also testified that he thought he was in fear of his life and he thought he was going to be shot at by the victim, it would be very hard to weigh the anger and his state of mind when he pulled the trigger. Mr. Brandon, didn't the defendant also claim that he was not angry? Yes, he did. Well, if he claimed that he was not angry, how can he complain about a jury instruction that fails to instruct jurors on what happens if he feels anger? Because I think that a fair reading of the record discredits that comment by him. I mean, there was a lot of backpedaling with respect to who was angry and who wasn't angry,  So you're suggesting he's entitled to the jury instruction because he's impeached himself or because other evidence has clearly impeached him? Because other evidence clearly shows that he was angry. So the trial judge is required to say, you say you weren't angry, but I find as a matter of law that you were angry, and so I'm going to instruct on this theory that doesn't really apply to the cases you have testified to. Well, there was a lot of evidence that he was angry. He testified that he wasn't angry. I think the jury could have easily discredited that. Nevertheless, he was entitled, if there was some evidence in the record, to have the jury instructed on his defense. And I don't think they were. In fact, they were precluded from considering his defense. And I think that's fairly apparent from the jury's deliberations. They spent two full days deliberating and wound up at second-degree murder. I think that the evidence of anger that is replete in this record just prevented them. You know, I think they had trouble reaching unanimity, number one, and they didn't go to murder one. Can I just clarify, though? One reason he may have disavowed anger was so that he could try to persuade everybody that he acted out of fear alone, given that that's the law in California. The other may be that he disputed it, but as you say, there was other evidence that he was angry. So however it got injected into the evidence, I'm just trying to understand how – let's suppose that he had himself put the evidence in of anger. Does California law preclude that? In other words, is there some reason he couldn't have put in evidence of his – said, yes, I was angry, but by the time I pulled the trigger, that was all a product of fear alone. Isn't that how the cases get tried in California? And then don't you go to the jury and argue that, yes, I was angry, but you've got to believe that by the time I pulled that trigger, that was acting out of fear for my life alone. In a perfect world, I think it would happen that way, but it doesn't always happen that way. I think that – Did he argue at all – was it argued at all to the jury that there was anger, but whatever anger there was involved here was superseded, if you will, by fear alone? I think his counsel felt precluded from arguing that based on the instructions. He had to veer away from that because the instructions told the jury, look, this guy has to be operating out of fear alone, otherwise he's not entitled to it. So he had to downplay and even – I don't think he could have brought it up without the instructions. He did not, no. He did not. But due process guarantees that the trial court instruct the jury on the defendant's theory of the case, and I think – But that wasn't his theory. Well, there was a lot of people who testified. I understand. Yeah. So the defense counsel could have adopted that theory. But he didn't start out with that theory. He could have adopted that theory, but he – I think he felt precluded. I'm sorry. He could have adopted the theory by the time he went to the jury, given what the evidence showed, but that wasn't the defendant's own theory of the case going in. He could have adopted the theory. Right. Okay. I don't – if the court would like me to go through the evidence that I think shows anger, I can do that. But – We've read the briefs. Okay. Yeah, there was – You may want to save your remaining time for rebuttal. I just want to make one further point. I don't think any of the other instructions, and the instructions taken as a whole, filled the gap that we see as the jury was instructed. All the voluntary manslaughter instruction, the murder and manslaughter distinguished instruction, all the instructions touched on imperfect self-defense. Okay. That's in your brief. Okay. All right. Then I'll hold back then. May it please the Court. Thank you, Your Honor. I have a question for Holly Hoffman, Deputy Attorney General, on behalf of Respondent Appelli. I believe the Court has pointed out the distinction in this case. Now, counsel keeps arguing that the defendant here was entitled to a pinpoint instruction, pinpointing his theory of the defense. The whole point is that this was not his theory of the defense. This was the prosecution's theory. That is the case, at least going in. But there was evidence from other witnesses. So in the record, there is evidence of anger. So I'd like to just, if I could back you up a little bit, just in a more general sense. I'm trying to understand how these cases get tried in California when it says the defendant must act out of fear alone. Is that – can counsel make it clear? Is it made clear to the jury that that relates to the act that actually results in the killing? If I start out angry and we have a fight, which happens all the time, okay, and unfortunately kids get angry with each other on the schoolyards and one pulls out a gun and blows the other away. But it started out as anger. But at the end, the kid was fearful because the other kid picked up a knife or a rock or something like that. Does the fact that anger precipitated the confrontation negate the ability to put on a defense that says his anger was overtaken by or superseded by fear? Actually, Trevino addresses that, the people versus Trevino. You know, you're asking about state law, and obviously state law controls here, and this Court is required to give deference to state law. You always do. Trevino, yes, Trevino specifically addressed that question. Trevino held that, indeed, it is unreasonable to require the absence of any other feelings other than fear for a homicide to be considered justifiable. And what Trevino specifically held is that, quote, such a requirement is not a part of the law, importantly, nor is it a part of Calgic No. 5.12. Trevino specifically held that that's not what Calgic 5.12 holds. What Calgic 5.12 holds by its language is that, or what 5.12 instructs, is that by its language that the defendant must have acted under the influence of fear alone. What's the point of the qualifier alone? What's the point of that in the instruction if not to assume that, yes, there may be a myriad of emotions here, but Trevino pointed out instances in which a defendant may indeed be the initial aggressor and then act out of fear when, as you've pointed out, the victim either uses a weapon greater than his own or becomes an aggressor in response. So if I then proposed an instruction which quoted Trevino, in effect, or paraphrased Trevino, that just that, that you will hear that you must act out of fear alone, but that does not preclude a range of emotions, wouldn't that be the equivalent to instruction C, to make clear to the jury just the response you've given to me, which is on the face of it acting out of fear alone is at least ambiguous? Well, I respectfully disagree that it's ambiguous, and Trevino says it's not ambiguous, and that's important because the state courts obviously are entitled to interpret their own law. But what is important here is that we, okay, in state law, under state law, the defendant is entitled to a pinpoint instruction, pinpointing his theory of the defense. I'm going to repeat this because I really think it's important. Under federal law, Condi v. Henry, you know, it is consistent that the defendant is entitled to have the trial court instruct the jury on the defendant's theory of the defense, provided it's supported by law and has some foundation in the evidence. What's important here is what we're discussing, the anger portion of the evidence here, was the prosecution's theory, not the defense theory. Now, clearly, the defense is entitled to counter the prosecution's theory, and obviously the prosecution is saying that the defendant was motivated by fear. Of course that's their theory. This was a first-degree murder charge. And as the Court of Appeal pointed out, the defendant was very lucky to have been convicted on second degree here. But what's important, and what we can't miss here, what we can't ignore is this was not the theory of the defense. He's not entitled to instructions which argue against the prosecution's theory. If there's evidence in the record, I submit, that the defendant adopts, based on the evidence that comes out, a tenable theory, and that anger is in this case, and therefore the jury should not negate his, even if they don't buy his story that he wasn't angry, even if there was anger, that doesn't negate his defense. But I'm still curious about what I consider to be some ambiguity here. The fact that Trevino had to address the issue suggests it's not unreasonable that this may be ambiguous. I note that California has recently, I think, adopted or proposes to adopt plain English jury instructions in the criminal law. Is this one of the ones? Has this been modified? Do you know? Actually, I don't know if this has been modified recently or not. But looking at this language, actually, Trevino was not concerned about the language. Trevino was more concerned, I mean, essentially, the defendant in Trevino was challenging the instruction itself, saying it was not a correct statement of law. It is a correct statement of law here, and that is not disputed. That's construed in Trevino. Well, which is all we have here in state court. Interpreting what, you know, fear alone means. Well, and that is up to the state courts to interpret. But what's important here is that if we look at federal law, the defense here was I was not angry. In other words, I have no idea why Rashid, you know, came at me. I thought he was coming at me with a gun, and I wasn't angry. That was what Harris testified. Johnson testified. No, he wasn't angry. There wasn't a problem here. The defense never adopted the prosecution's theory that, gee, even if I were angry, so what? I was afraid. That was never adopted here. I think they must have, because didn't he proffer instruction C? Why else was he proffering? He proffered that instruction, but he never – There was no defense evidence offered on that theory. Don't you get a chance to put in something that negates what has come out through other witnesses? In other words, as the trial – Counsel was not prevented from arguing. Obviously, he's not prevented from countering the prosecution's theory, but he's not entitled to instructions, special instructions. Why is he entitled to an alternative instruction if there's another theory presented by somebody else? In other words, the defense doesn't have to put all of his eggs in the no-anger basket. If the prosecution is saying, yes, there's ample evidence that he is angry, why can't the defense come back and say, look, we want him instructed on the no-anger defense, but if the jury doesn't find that, in California there is still an imperfect self-defense, and we're entitled to special instruction C? Well, I don't understand how this would impact the imperfect self-defense theory. In other words, clearly the jurors were instructed under 517 that malice was not negated in the imperfect self-defense, so that that argument really doesn't hold water. What's important here is under California law, the defendant is not entitled to instructions that counter the prosecution's theory. Those are – those instructions are considered argumentative. What is important is that the defendant is entitled to instructions, pinpoint or otherwise, that apply to his theory of the defense. And in this case, he was given the full panoply of instructions on his theory. Okay. Can you – what evidence do you have that in California one is not entitled to – is only entitled to jury instructions on his own theory of the case and not on somebody else's theory of the case? Well, we've cited authority in our brief, but let's also look at Condi v. Henry. I mean, under federal law, he is only entitled to instructions that pinpoint his theory of defense and is supported by substantial evidence. Ms. Hoffman, I'm looking at Trevino, and in the paragraph just after what you quoted to us just a few minutes ago, the court observes as follows. Trevino could have requested additional instructions with regard to his feeling anger toward Blanton as well as fear, or with regard to a situation where anger and fear were both causal factors. He did not do so. And that's fine. He could have done so. But to – in this case, we can't ascribe error here because the court didn't give special instruction C. Why? Because the defendant was given all the instructions so that – that pertained to his defense. He was not denied his opportunity to present a defense. Not at all. Like I said, he was given the full panoply of self-defense instructions that apply to his theory. He's not entitled to argumentative instructions. And the bottom line here, as the court pointed out initially, the special instruction C was merely duplicative of 512. It was merely duplicative. 512 does not state that there must be an absence of other – that there need not be an absence. That's not the – it's not the law. The law in self-defense is that the defendant must have acted under the influence of fear alone. Those instructions were given. He was free to argue that even if you feel that I was angry, that does not preclude self-defense. He was free to argue that and chose not to. Why? Because he did not want to focus on the anger. Because the theory of the defense was that he was not the least bit angry. And the only evidence of anger came from the prosecution. Okay. All right. Thank you. I'll give you a minute for rebuttal and just a minute because – I think I'll submit. Okay, fine. Thank you. All right. The case is argued to be submitted. We thank counsel for argument.
judges: Fisher, Bybee, Mahan